UNITED STATES of America, Plaintiff,

v.

Milton MILLER, D.O., Defendant.

Crim. A. No. 85–80438.

United States District Court,
E.D. Michigan, S.D.

June 22, 1988.

Wayne Pratt, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Richard F. Lustig, Southfield, Mich., for defendant.

## MEMORANDUM OPINION

SUHRHEINRICH, District Judge.

This matter is before the Court on defendant's motion for reduction of sentence. Several hearings have been had, numerous medical reports have been filed, and the government has responded. The Court now finds the issue presented is ripe for review and decision. Given that the instant dispute involves complex medical testimony and diagnosis as well as novel areas of law, the Court believes the delay in the issuance of a decision regarding defendant's timely filed motion is not unreasonable.

Defendant brings this motion for reduction of sentence pursuant to Fed.R.Cr.P. 35(b) which provides:

> A motion to reduce sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Although Rule 35 has recently been amended, the above-quoted language is applicable to the instant offenses.

Defendant contends he should be granted a reduction of sentence due to changes in his mental and physical health. After sentencing before this Court, defendant, while appealing his conviction, suffered a stroke in Fall, 1986. As a result of this stroke as well as some preexisting health problems, defendant now suffers dementia. It is the extent of this dementia which is now before the Court. Defendant, through counsel, argues he is no longer able to appreciate the nature of his punishment, and therefore, pursuant to Rule 35, a reduction of sentence for change in circumstances is appropriate.

Several hearings were had in this matter at which time the Court heard testimony from medical doctors as well as arguments of counsel. Upon suggestion of this Court, defendant was examined by Dr. John Gilroy, a nationally-recognized neurologist and full-time professor at Wayne State University Medical School. On January 5,

1988, the Court held an evidentiary hearing to determine the results of this examination. Dr. Gilroy testified that defendant suffered a series of minor strokes. An MRI scan of the head revealed the presence of multiple strokes and wasting of the brain. These strokes, according to Dr. Gilroy, caused a disturbance of brain function; the brain is starved of blood, causing function to progressively decrease.

Dr. Gilroy diagnosed defendant as suffering from multi-infarct dementia, hardening of the arteries, impairment of the circulation in the brain and a partially occluded heart due to blood clots. These physical problems caused defendant's dementia. Dr. Gilroy testified that during his examination of defendant, defendant exhibited entirely inappropriate behavior under the circumstances, maintaining a "gladdness about the whole affair." Dr. Gilroy concluded defendant suffered a severe deficit with no insight due to his dementia; defendant is completely unable to appreciate what he has done or why he is being punished. Dr. Gilroy found no hope for recovery, only continued degenerative changes in the brain.

The Court finds the testimony of Dr. Gilroy conclusive as to the existence of dementia affecting defendant's ability to appreciate the circumstances surrounding his impending imprisonment. According to Dr. Gilroy's testimony, defendant suffers a brain disorder making it impossible for defendant to comprehend the purpose of his imprisonment. Defendant is able to relate as to those matters immediately before him, but he lacks the ability to place these matters in the proper context. In other words, defendant would be able to recognize that he was in prison but would not be able to relate his imprisonment to the conduct for which he was convicted.

Regardless of the rationale employed to justify imprisonment, the Court finds no reasonable basis exists for imprisonment of an individual suffering dementia of a degree experienced by defendant. Where a

defendant suffers dementia to such a degree that he is unable to appreciate the reasons for his incarceration, imprisonment fails to serve any useful purpose. A general survey of the theories justifying imprisonment of wrong-doers reveals five oft-cited rationales including: restraint, rehabilitation, deterence, prevention, and retribution.[1] Under the restraint theory, the criminal is imprisoned to protect society from further criminal conduct. This theory would not establish a basis for imprisonment of defendant Miller as he no longer possesses the mental or physical ability to perpetrate the crimes for which he was convicted; in addition to the limitations imposed by defendant's dementia, defendant is no longer licensed to dispense drugs.

The rehabilitation theory reasons that through imprisonment, treatment, and training a change can be effected in the criminal mindset. This rationale for imprisonment is also inapplicable to the instant defendant. An individual suffering dementia does not possess the ability to comprehend or apply any rehabilitative treatment. The deterrence theory seeks to prevent the commission of future crimes by other individuals by setting out, as an example, the punishment for the present crime. In the instant matter, the Court finds no plausible argument for contending that the punishment, or lack thereof, meted out on an individual suffering dementia would have any general deterrent effect on competent individuals disposed to commit similar crimes.

The prevention theory, aimed at deterring the specific criminal, rather than society, by requiring him to endure a hardship which he will want to avoid in the future, is also inapplicable as defendant Miller is unable to effectively comprehend the connection between his punishment and his criminal acts. Further, as stated above, defendant has lost his license to dispense drugs. The loss of this license is likely sufficient to prevent further crimes, as defendant no longer has access to the drugs used to

---

1. The following discussion is based on W. La-Fave & A. Scott, Criminal Law § 5 (1972).

perpetrate the instant offenses.[2] Finally, the oldest theory of punishment, retribution, seeks punishment as a means of obtaining revenge or retaliation for the crime committed. As with the other theories of punishment, the Court finds the retributive theory fails to provide a basis for punishing the instant defendant. It is impossible to obtain retribution from an individual who is unable to appreciate the connection between his incarceration and his prior criminal acts.

Because the Court finds no basis for imposing imprisonment on an individual suffering degenerative dementia of a degree sufficient to prevent the ability to appreciate the circumstances causing his punishment, the Court finds imprisonment of defendant Miller is inappropriate. However, the Court in no way intends to imply condonation for defendant's actions. The Court feels very strongly that defendant's actions were despicable and reprehensible. Society, by granting defendant a license to prescribe drugs, bestowed a unique privilege upon defendant. With that privilege, society also placed their trust in defendant's promise to uphold this responsibility. Rather than remaining true to this vow, defendant perverted his privilege to peddle narcotics in pursuit of a quick buck.[3]

While the Court is convinced that imprisonment of the instant defendant would serve no useful purpose, the Court also finds it deplorable that defendant's family will be afforded the opportunity of living a life of opulence derived largely from the illicit trade of defendant. However, after carefully examining the wording of Rule 35 and other decisions under this rule, the Court has found no authority to allow the imposition of an increased fine. Therefore, the Court finds itself in the unenviable position of having to allow a guilty man to go free while also allowing this man's family to continue living comfortably on defendant's illegally-acquired legacy.

Accordingly, for all the foregoing reasons, the Court shall grant defendant's motion for reduction of sentence and reduce the sentence to a period of probation. An appropriate order shall be entered upon completion of a recommendation by the probation department.

---

**2.** In addition, defendant, at age 67 and in poor health, faces 15 years of imprisonment making the need for prevention unlikely.

**3.** And in fact, it seems defendant made a great deal of money by abusing the special opportunity given him. Between 1980 and 1984, defend-

ant was the largest purchaser of amphetamines in Michigan and the second largest purchaser in the country. According to the government's calculations, defendant netted approximately one million dollars from the illegal sale of amphetamines during this period.